Case 17-1993 and 17-2039 Randy Berkshire v. Debra Dahl et al. Or arguments as 15 minutes for plaintiff, 15 minutes to be shared by defendants. Mr. Robert, Mr. Adam Robert DeBeer for Debra Dahl. Good morning, your honors, and may it please the court. I'm Adam DeBeer and I'm appearing on behalf of all the appellants in this matter with the exception of Dr. Posios, whose counsel for Dr. Posios will be presenting arguments for five minutes. I'll be presenting arguments for eight minutes and then I'll be taking two for rebuttal. Now, I briefed a number of issues to this court, but I'm going to do my best to focus on the one that I think is of the most jurisprudential significance. And that is the issue raised by defendant or appellant Dr. Debra Dahl, specifically as to whether she's entitled to qualified immunity. Now, as to the violations prong of the qualified immunity analysis, Dr. Dahl asserts that she is entitled to qualified immunity because Mr. Berkshire did not engage in protected conduct. Specifically, his conduct in the form of submission of the agenda to the warden's forum was not conduct protected under the petition clause of the First Amendment, as well as his assistance that he provided to the two other prisoners. That also wasn't conduct protected under the First Amendment. Now, for two reasons, Dr. Dahl is entitled to qualified immunity under the violations prong of the qualified immunity analysis. First, when Mr. Berkshire presented the agenda to the residential treatment program officials, he included within that agenda an individual complaint. Specifically, he asked that a policy be set so Sergeant Hagerty would allow him to conduct rounds on A-Wing. And specifically, under the warden's forum policy directive, it provides that housing unit representatives shall not use their position to advance individual claims. Why is it an individual claim if the claim was that he was going to go around to the other prisoners? It's a claim that affects himself and only affects himself. Doesn't it affect the other prisoners in terms of their being able to give agenda items or actual information to him? Your Honor, and I believe Mr. Berkshire, the answer is no. And I believe that Mr. Berkshire in his appellate briefs acknowledged that he was one of the two housing unit representatives for the warden's forum. So it did not prevent the other prisoners from being able to gain access to their housing unit representatives. And that policy directive in particular, the portion of the warden's forum policy directive, has already been found to be legitimate by a panel in an unpublished decision of this court. Specifically in Griffin v. Burgess, this court cited to the Jones v. North Carolina Prisoner Laborers Union, which said that if a prison regulation takes away one way in which prisoners can advance their right to petition the government for redress of their grievances, that's fine so long as there are other avenues available. And specifically, the other avenue available in this case is the grievance procedure. And additionally, this court just last year in Maben v. Thielen acknowledged that prisoners are free to give verbal complaints to corrections officers when they see them in the chow hall or in the hall or in their housing units. So it did not take away all of the abilities for prisoners to present individual grievances to the court. Is that the same question? The constitutionality of taking an avenue away, is that the same question as whether it was protected activity? Let's say his complainer, he wants to put an agenda item on that addresses the fact that they take it away. So does that make it an illegitimate agenda item just because the practice is constitutional? Specifically at issue in this case, Your Honor, is the Thaddeus X opinion in which it says that when you act in a way that is contrary to a legitimate policy director or a legitimate prison regulation, you are not engaged in protected conduct. So no, the issues are slightly different, but in this particular instance, by including an individual complaint, he violated a legitimate prison regulation. However, I do want to say that even if this court finds that it was not an individual complaint and if it was a group complaint, not in violation of the Warden's Forum policy directive, it's still nevertheless not conduct protected under the First Amendment. And the reason is that prisoners do not have an independent right under the petition clause of the First Amendment to seek redress of other prisoners' grievances, absent a showing, of course, that the other prisoners required their help to do so. And in this case, the district court specifically found that there does not seem to be any evidence suggesting, as in King v. Zemiria, that his assistance was required, that is, Berkshire's assistance was required, before prisoners were permitted to access the courts. And again, I am not trying to argue the facts. Mr. Berkshire's own affidavit said that only in his opinion was his assistance necessary. And he also acknowledged, as I mentioned earlier, that there were two housing unit representatives, a minority housing unit representative and a non-minority housing unit representative. So he hasn't presented evidence below that his assistance was necessary. And for these two reasons, neither was his assistance to the two prisoners that he assisted in filing grievances, nor was his submission of the agenda to the Warden's Forum conduct protected under the petition clause of the First Amendment. And that's because, simply put, the other prisoners didn't require his assistance in order to bring those grievances. They had the ability to submit the grievances through the grievance system, or essentially, as this court said in Mabin, approach any of the corrections officers when they saw them in the chow hall or the housing units. Does this mechanism, a mechanism provided by the prison for prisoners to get together and present an agenda to the warden and then have a meeting with the warden? Yes. So you're saying then that the prison authorizes this procedure, but that it's perfectly fine for the prison then to retaliate against a prisoner who is attempting to comply with what is the officially approved method. And his fatal flaw is that he added one issue on the many issues that related to his situation as an individual. Am I right? No, Your Honor, and let me explain why. First of all, I don't think that this court needs to get to the individual issue. It's my position that it was in violation of the policy directive, but even if it was a group concern, the Warden's Forum program is designed so that prisoners have the ability to present group grievances to the actual administration. And he was trying to do that, and you're saying it's not protected, and therefore, you're saying it's perfectly fine to retaliate against him for trying to do that. No, Your Honor, it's not perfectly fine for anyone to try to retaliate against anyone for presenting these grievances. However, under the qualified immunity analysis, it has to be unlawful. It wasn't clearly established that this protected conduct or that this conduct in question was unlawful. But now you're getting to the clearly established prong, and I was asking about the underlying activity. I mean, it seems to me that if we say it's not protected activity, that we are then saying it's perfectly fine for the prison people to retaliate against him. It might be bad for the prison officials to retaliate against any prisoners, but in this particular instance, it doesn't rise to the constitutional dimension, and that specifically is because what he was doing was not protected conduct under the Petition Clause of the First Amendment. And I'd just like to point out that I'm not asking this court to change the law or to otherwise restrict or take away any First Amendment rights that the prisoners have. I'm only asking that this court protect the distinction between the Warden's Forum Program and the Grievance Program. The Warden's Forum Program is designed for group grievances, and it is a way for the prisoners to be able to speak directly to the warden and or their designees. And it serves a great purpose for the MDOC, the Michigan Department of Corrections, as well as the prisoners who get to feel like they are part of a problem-solving group. The housing unit representative position is a highly sought-out position among prisoners, and that's what I'm asking this court to protect, the distinction between the two programs. I'll reserve the remaining two minutes for rebuttal. Good morning, Judge Moore, Judge White, and Judge Merritt. May I please the court, Dale Robinson, on behalf of Appellant Vassilios Posios. I will be reserving one minute for rebuttal. I'd like to first address the issue of jurisdiction. The appellee has indicated that this court does not have jurisdiction to hear this appeal. That is incorrect. The issue of qualified immunity was in the summary judgment brief filed in the district court. It was not mentioned in the objections. However, the objections pursuant to Kent v. Johnson is a procedural rule and not a jurisdictional rule. And both Thomas v. Arnn and Kent v. Johnson allow this court to consider whether or not it was waived. And then to consider the qualified immunity argument in the interest of justice. And that's what the appellant asked this court to do as it relates to jurisdiction. As it relates to the appellate jurisdiction, appellee has the intent of that argument wrong. The reason that the facts regarding the Eighth Amendment claim were included in the brief is to inform the court what the facts they would decide the facts were. And that would be the first prong of qualified immunity if they got there in this case for Dr. Posios. That is whether or not a constitutional right was violated. It is the same set of facts that would support a qualified immunity that no constitutional right was violated that would support the Eighth Amendment violation argument. So that's why it was inexplicably intertwined with the qualified immunity arguments. The Supreme Court had decided Filarski v. Delia and indicated that there was no distinction drawn at common law for qualified immunity for an attorney who was full-time or part-time. It found that the contracted attorney with the state was subject to qualified immunity even though he was an outside contractor. Appellant submits that Dr. Posios should be the same. And even more so in this case because of the full-time nature with which he works. McCollum v. Tepe, which is the controlling law in the state which controlled this issue for Judge Tarnow in the district court, indicates that with their analysis, the history, the firm roots in history, they decided that that panel decided that there was not a history of a 40 doctors immunity at common law. And therefore, they were not going to create one. However, after several pages of going through the history, they had three paragraphs regarding policy. It is the policy prong which necessitates that McCollum was wrongly decided and that the qualified immunity should be afforded to individuals situated such as Dr. Posios. McCollum is a published case, isn't it? Yes, Your Honor. So how can we decide as a panel that it's wrong? Well, you can't decide as a panel that it's wrong, but it can be decided after this decision with the re-hearing on Bonk. So that's what you're asking for, for the circuit to change its position on this? Eventually, yes. Procedurally, that's how we have to go through it in order to get to that point. But if you look at the policy part of this, what McCollum did briefly was say that, well, the market pressures make it different for the private corporations. In Richardson, you had a private prison run by a private corporation with private guards and private employees. That's not what we have with the Michigan Department of Corrections when you have a psychiatrist working for a contractor. He's working right next to a state employee, treating sometimes the same patients. I have another case where there's a state psychiatrist who treats the person when he's in general population. When he goes into acute care, it's a contracted psychiatrist. They treat him with the same medications, the same diagnosis, exactly the same treatment plans. If they were both sued, the contractor would be subject to liability. The state employee would not be. This is different. As time has gone on... The red light is on, so I don't know if you want to use your rebuttal time. It's fine. No, Your Honor. I'll save that. Thank you. Good morning, Your Honors, and may it please the Court. Connor Fitzpatrick on behalf of the appellee, Randy Berkshire. The bulk of the arguments in appellant's briefs are direct and indirect attacks on the district court's rulings as to whether a genuine issue of material fact exists. This Court lacks interlocutory jurisdiction to hear these arguments under the Supreme Court's decision in Johnson v. Jones. The sole issue that is properly before the Court, and that has not otherwise been waived, is whether Mr. Berkshire's peaceful letter to Defendant Dahl constituted clearly established protected activity under the First Amendment. It did. The First Amendment protects the right of a citizen to write a peaceful letter to a government official, asking them to fix a problem. Whether it's a resident complaining about a broken streetlight, a constituent wishing to express their views on proposed legislation, or an inmate complaining that their conditions are inadequate, the Constitution protects peaceful outreach to the government by the citizen. And here, the magistrate judge and district court both correctly held that Mr. Berkshire's peaceful letter constituted protected activity under the First Amendment. My colleague on the other side places a significant amount of focus on a prison policy that Mr. Berkshire supposedly violated when he submitted this letter. I have three principal responses to this argument. First, Judge Moore, as you pointed out, the supposed individual concern that was in the letter, which was number five in the list, was not really an individual concern at all. The complaint was that Mr. Berkshire was not being permitted to conduct rounds in the A-Wing unit of the RTP portion of the facility. That is not a complaint that is personal to Mr. Berkshire. That is a complaint that the individuals who resided in A-Wing were unable to meet with their elected housing unit representative. So we'll get to the issue of the other housing unit representative in a second. But speaking specifically to the issue of whether or not it was an individual complaint, it simply wasn't. The second response is that this argument that there was a policy violation was waived. Defendant Dahl filed a motion to dismiss, two motions for summary judgment, a response to our motion for summary judgment, an objection to the report on summary judgment, and an answer and affirmative defenses. And in none of those did Defendant Dahl ever raise a concern that Mr. Berkshire's letter violated a prison policy. So when was this argument first raised? It was first raised in their brief before this court, Your Honor. The first time this policy directive was mentioned as a possibility that Mr. Berkshire might have violated it was in Defendant Dahl's opening brief in this court. This case has been pending since 2012. Defendant Dahl had six and a half years to argue that Mr. Berkshire's letter, or at least one-sixth of it, violated a prison policy. It is too late to make that argument now, years after the close of discovery and after we would have had the opportunity to explore what these supposed legitimate peniological objectives are through the mechanisms of discovery. The Sixth Circuit is too late to raise that argument. And even if Your Honors don't buy either of those arguments, under this court's published decision in Maben v. Thielen, the procedural posture of this case, that it's a qualified immunity appeal, means that Mr. Berkshire gets all reasonable factual inferences when it comes to whether or not his conduct was protected. So even if the court believes that it's a close call, the tie goes to Mr. Berkshire. He is entitled to the favorable inference that this complaint that the prisoners on A-Wing were not being permitted to speak with him as the housing unit representative, that that was not an individual complaint. So it wasn't an individual complaint. Any argument that there was a policy violation was waived, and even if neither of those are the case, the tie goes to Mr. Berkshire under Maben and under the qualified immunity procedural posture. Do I understand that your First Amendment argument really has nothing to do with his role? And you're basically saying that even as an individual prisoner, he had a right to submit the agenda? Yes, Your Honor. Now, Mr. Berkshire's status as a housing unit representative likely helps his case for the reasons that, Judge Moore, you were getting to a little bit earlier. That this was a program for submitting complaints that was set up by the prison. And as this court held in Holzmer when it adopted the Pearson decision, it would be a perverse result for the prison to essentially set out the complaint box and invite complaints from prisoners about how the prison might be able to submit the agenda. And then to give the prison a free pass to retaliate on the basis of complaints that are made through that forum. But to directly answer your question, Judge White, the answer is yes. Mr. Berkshire wrote a peaceful letter to his unit chief, raising specific concerns about policies that were being violated by unit conditions. Such a letter is directly governed by this court's decision in Woelfel v. Bates in 1983. Woelfel v. Bates also involved a prisoner who decided to write a peaceful letter to prison officials, raising concerns that prison conditions were essentially subpar, that they were inadequate. And like here, the prison officials argued that the letter was not protected by the First Amendment and that even if the letter was protected, it wasn't clearly established. And back in 1983, this court rejected both of those arguments. This court held that Pell made it clearly established that a peaceful letter to a government official asking them to fix a problem, even when that letter is written by a prisoner and even when the recipient of that letter is a member of the prison administration, that that constitutes clearly established protected conduct under the First Amendment. Now, my colleague on the other side spends a significant amount of time focusing on the fact that Mr. Berkshire submitted his letter as part of the Warden's Forum program. But the problem with that argument is it doesn't answer the inquiry under Pell. It doesn't answer why, even if Mr. Berkshire submitted this letter as part of the Warden's Forum program, how that could somehow make it inconsistent with legitimate peniological objectives. And that's why, Judge White, returning to your question, that's why it helps Mr. Berkshire's case. Because it is inconceivable that a letter submitted in accordance with a prison procedure, submitted in accordance with a prison policy directive inviting such a letter, it is inconceivable that a letter submitted pursuant to prison policy could somehow clash with legitimate peniological objectives. The plaintiff in Woelfel v. Bates did not have a prison policy that he was submitting the letter under. He was simply a regular prisoner submitting a letter asking for conditions to be improved. Suppose that the letter, hypothetically, that the letter just asked for conditions that affected Mr. Berkshire to be improved. In other words, it should have been a grievance, hypothetically. Does that make a difference? Possibly, Your Honor. I think it would be a closer call. But the reason I don't feel comfortable saying that it would not be protected by the First Amendment is I still have a hard time seeing under Pell what the legitimate peniological interest would be in being able to punish Mr. Berkshire for such a letter. I think there's a good chance that the prison would be entitled to throw the letter in the trash and ignore it. But in terms of actually punishing Mr. Berkshire and taking adverse action against him for maybe filing complaints in the wrong complaint box, if you will, I'm not sure there's a legitimate peniological objective in affirmatively punishing a prisoner for that. But here, Mr. Berkshire submitted his letter as part of the Warden's Forum program at the invitation of the prison. I'd like to address my colleague on the other side's arguments that because there was another housing unit representative and because there was a grievance process available, that means that Mr. Berkshire's letter was not protected by the First Amendment. The flaw in my colleague's argument is that it is mixing apples and oranges. It's mixing two very distinct and separate lines of First Amendment law and imposing their requirements on one another. So there is a First Amendment right to access the courts. That was most recently recognized in Thaddeus X, that through the grievance process, there is a right under the First Amendment for individuals to access the courts to vindicate whether it's their civil liberties, their civil rights, habeas petitions, and what have you. That is an entirely separate inquiry from what Pell and Woelfel addressed, which is a traditional petition clause letter to the government asking for conditions to be met. It's asking for conditions to be improved. To be sure, both of them have their foundations in the petition clause, but that does not mean that all of the requirements of Thaddeus X can be imposed on the housing unit representative. And there's a good reason why. Thaddeus X speaks to the filing of official grievances, which under the Prison Litigation Reform Act are a prerequisite to filing a civil rights complaint in a district court. It makes full sense to prohibit grievances from being filed on behalf of somebody else. To the same extent, it makes sense to prohibit a lawsuit from being filed on behalf of somebody else. It's essentially a standing problem. But with respect to a traditional letter to the government saying, these conditions concern me. I would like the government to consider fixing them, my colleague can point to no authority suggesting that there is a requirement that such a letter only speak to individual concerns. And that's especially true here, where the housing unit representative program expressly required only concerns about the prison community at large. So they're trying to have it both ways. They're trying to say Mr. Brickshire did not have a right to raise concerns about himself to the warden's forum. But to the extent he raised concerns about himself, that means that his letter was not protected by the First Amendment. This type of shell game is what was expressly closed down by this court in Holzmer when it adopted Pearson. When it held that nothing in the First Amendment suggests that the right to petition the government attaches only when the advocacy takes a specific form. If my colleague's argument were correct, that because the grievance process was still available, Mr. Brickshire's letter was not protected by the First Amendment, Mabin would have come out the other way. Pearson would have come out the other way. So too would Woelfel. Because in all three of those scenarios, a grievance process was still open. Or in the case of Woelfel, the possibility of filing a complaint in the district court was still open. So it is simply not the law that because an avenue of complaint remains open, that that means that the prison may legitimately curtail all other forms of expression. That is not the test under Pell. The test under Pell is whether an exercise of First Amendment liberties is inconsistent with their status of a prisoner. Something like a march or a group protest or in Griven versus Bergheist, one of the cases that my colleague discussed, an instance where a letter essentially threatens a prison uprising. So Griven versus Bergheist did not hold that a letter was not protected by the First Amendment. It held that a letter which threatened the prison, that it is not up to prison officials to decide what is best for the prisoners, that there was a legitimate basis for prison officials to view that letter as a security threat. Nothing similar has been pointed to here. And in fact, the magistrate judge on pages 5062 and 5063 of her opinion, expressly pointed to the fact that there has never been an argument by Defendant Dahl that Mr. Berkshire's letter jeopardizes security. That there has never been an argument by Defendant Dahl that Mr. Berkshire's letter violates prison policy. The first time a suggestion of even a bare bones policy violation came to light was in the Sixth Circuit merits brief that was filed more than six years after this action began. With respect to Mr. Posios' arguments, the first issue, Your Honors, is that qualified immunity was waived. The objections to the district court did not even contain the words qualified immunity. And I understand from my colleague's reply brief that his argument that because McCollum is binding, that means that essentially it wouldn't have been any use to raise that issue to the district court. That might be fine. That might be a fine explanation for why he didn't challenge McCollum in the district court. But it still does not explain why there wasn't an argument raised that even if the facts are viewed in the light most favorable to Mr. Berkshire, why qualified immunity would still attach. And that is where the argument was waived. And moreover, Your Honors, we filed a motion to dismiss Defendant Posios' appeal for precisely this reason. And in response to that motion, and this is in case number 17, 1993, which is Dr. Posios' separate case, docket number eight, page four, in response to our motion to dismiss his appeal, Dr. Posios promised this court that he was not going to raise the issue of qualified immunity, that he was going to rely on pendant jurisdiction. And then, of course, in his merits brief, it is all about why he's entitled to qualified immunity and why this court should overturn McCollum in an en banc fashion. I think there's even an argument there that he's judicially estopped after defeating our motion. What is his argument on pendant appellate jurisdiction? What is he appending his appeal on? So, Judge Moore, if I understand my colleague's argument correctly, I believe it's that because much of the evidence involving Defendant Bouvet's and Surmo's claims is similar to the evidence that relates to Mr. Posios' claim, essentially it can all be decided at the same time. The problem with that is that, as I mentioned earlier, the court doesn't have jurisdiction to consider whether or not a genuine issue of material fact exists with respect to Defendant Bouvet and Defendant Surmo. So you can't use pendant jurisdiction on the basis of an issue that itself lacks jurisdiction to be heard. And I think the best way to show the true character of Defendant Posios' argument is in his opening merits brief, when the key affidavit that the district court relied on, that of Brent Lange, to find that Mr. Posios was not entitled to qualified immunity, Defendant Posios' argument is that Mr. Lange simply isn't right, that his affidavit isn't true. That is a factual argument for the district court. It has no basis in a qualified immunity appeal. Thank you. I just have a couple of follow-up points. I want to focus first on counsel's argument regarding Pell v. Pecuniae. Now Pell v. Pecuniae talks about that a prisoner retains those First Amendment rights that are not inconsistent with his status as a prisoner. Now the agenda itself may have been peaceful, it was peaceful, but it has to be consistent with his status as a prisoner. And his status as a prisoner was that of a housing unit representative. And the agenda has to be viewed in that light. And simply put, under no published case law in this circuit does a prisoner have the right to petition for the redress of grievances on behalf of other prisoners. Now additionally, as to the clearly established prong, a youthful case... So hypothetically, one prisoner sees another prisoner being beaten up by the guards. The prisoner who sees that happening does not have a right to send a letter to the prison head saying that this violation of someone else's constitutional rights occurred, and can be punished for sending that letter. That's the basis of your position, no? No, that's not the basis of my position. They may have a right to do that under the free speech clause. Petitioner has brought this argument under the petition clause of the First Amendment. And in your hypothetical, I'm assuming that the prisoner you mentioned was not a housing unit representative. Right, just gratuitously is sending this letter. So under the free speech clause, I would concede that that prisoner has a right to do that on behalf of another prisoner. So the key is that this is a petition clause claim? To me, yes it is, and that's the only avenue in which counsel has presented it as such. And I would just lastly like to point the court to the Western District of Michigan's opinion in Miller v. Burgess, which is cited in our merits briefing. In that case, they distinguished King v. Zemiria with the Miller v. Burgess case. And the court noted that a prisoner does have the right to assist other prisoners with their grievances if the help is necessary, but they don't have the right as a housing unit representative under the petition clause. To do the same. The former has protected conduct helping other prisoners if necessary. Participation as a housing unit representative in the warden's forum is not. And because that case was decided in 2014, it cannot be the case that it was clearly established as such. Thank you, Your Honor. I'm out of time, and I appreciate the opportunity of having presented arguments in front of you. Briefly, Your Honors, Pele's counsel refers to document 8 in case 17993, page 4, that that's where the qualified immunity argument was waived. I've looked at it, and I'm holding it in my hand, and the block quote that he put in his brief is nowhere to be found on that page. Nowhere was the qualified immunity argument waived. In fact, on that same page, it goes into a denial of summary judgment on the basis of qualified immunity is a collateral order that immediately appealable under Cowen. So that's exactly what was being argued on there, was not being waived. And lastly, we're not, but the appellate is not asking for this court to make a question of fact decision. If they get to the point of the first problem of qualified immunity, they will see that if they look at Dr. Clark's testimony, she testified that Dr. Posios did nothing wrong. You don't have to get to a state of mind if he didn't act to do anything wrong. Thank you. Thank you all for your argument. The case will be submitted. Would the clerk call the next case, please?